**UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:10-CR-72(1) |
| | § | 1:10-CR-154(1) |
| GARY WAYNE SHANKLES | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Gary Wayne Shankles's ("Shankles") Motion for

Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#34) wherein

Shankles seeks a reduction in sentence/compassionate release. The Government filed a response

in opposition to the motion (#38). Shankles filed a reply (#39). United States Probation and

Pretrial Services ("Probation") conducted an investigation and recommends that the court deny

Shankles's motion for compassionate release. Having considered the pending motion, the

Government's response, Shankles's reply, the submissions of the parties, Probation's

recommendation, the record, and the applicable law, the court is of the opinion that the motion

should be denied.

I.    Background

On June 16, 2010, a grand jury in the Eastern District of Texas, Beaumont Division,

returned a two-count Indictment against Shankles in Cause No. 1:10-CR-72 in which he was

charged in Count One with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) & (d), and

in Count Two with Possession of a Firearm in Furtherance of a Violent Crime, in violation of 18

U.S.C. § 924(c). On December 21, 2010, the United States Attorney filed an Information in

Cause No. 1:10-CR-154, charging Shankles in Count One with Carjacking, in violation of 18

U.S.C. § 2119. On January 5, 2011, Shankles pleaded guilty to Count One of Cause No. 1:10-

CR-72 and to Count One of Cause No. 1:10-CR-154. He agreed, pursuant to a binding plea agreement, to a term of imprisonment of 188 months in Cause No. 1:10-CR-72 and to a term of imprisonment of 180 months in Cause No. 1:10-CR-154, to be served concurrently. The statutory maximum for the bank robbery offense was 25 years' imprisonment (300 months) and for the carjacking offense it was 15 years' imprisonment (180 months). On June 22, 2011, Judge Ron Clark accepted the plea agreements and sentenced Shankles to the agreed sentences of 188 months for the bank robbery and 180 months for the carjacking, to be served concurrently. The 188-month sentence is to be followed by a term of 5 years of supervised release, and the 180-month sentence is to be followed by a term of 3 years of supervised release, with the supervised release terms to be served concurrently.

Shankles did not appeal his convictions or sentences and has not sought federal habeas corpus relief. Shankles is currently housed at Federal Correctional Institution Victorville Medium II ("FCI Victorville Medium II"), located in Victorville, California, with a projected release date of November 11, 2029.

Shankles, age 76, filed his motion for compassionate release on November 11, 2024. In his motion, he claims to have a serious physical or medical condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility, and that he is not expected to recover from this condition. He also asserts that he is 65 years or older and is experiencing a serious deterioration in physical health or mental health because of the aging process. Shanks further contends, without additional elaboration, that there are other extraordinary and compelling reasons for his release, stating only "Please see attached,"

2

but it is not clear to which of the several attachments he is referring.  He attached a Proposed Release Plan in which he seeks to be released to reside at the home of his sister, who is in her 80's, in Emmet, Arkansas.  Also attached is a small packet of medical records from Victor Valley Global Medical Center dated March 7-10, 2025.

In a letter to the court dated November 1, 2024, Shankles stated that one of his immediate priorities is to be available to his older sister, 79 years old at the time, who was doing her best to maintain her 60-acre hilltop outside of Hope, Arkansas, all by herself.  He added that his sister resides there alone, basically isolated, being 8 to 10 miles from any emergency help. He elaborated, "She lives in what can only be described as a dangerous situation, as it's a full-time job to constantly beat-back the ever-encroaching wild which encircles her property."  Shankles further points out in the letter that he has been continuously confined since February of 2010.  He laments, "I truly hate actually being the live definition, the true embodiment of a career criminal, habitual offender and especially a violent offender, as I have never, EVER physically harmed another human being in my entire life, with the sole exception of my two loving, caring and endlessly forgiving parents!"  He further claims to suffer from Chronic Obstructive Pulmonary Disease ("COPD"), high blood pressure (hypertension), a hearing loss in his left ear, occasional vertigo, tinnitus  (ringing sound in the ear), swelling of his feet and ankles, and sinus problems. In closing, Shankles also longs for a personal relationship with an appreciative woman and to rescue/adopt a good dog.  Shankles submitted yet another letter to the court dated July 22, 2025. In this letter, he reiterates his request to live with and assist his elder sister maintain a 60-acre homestead near Hope, Arkansas, which he claims represents an "emergency" both for himself and

his sister.  Near the end of the letter, Shankles reveals his own self-interest in this arrangement.  He explains:

> "Further should anything physically occur to her prior to my release, I will unfortunately and simply forfeit any and all right to EVERYTHING!  No opportunity for residence, NOTHING at all!"  Without going into details, I'll simply state that my relationship with her children is all but non-existent!  (Just the way it is.)

On January 9, 2026, Shankles filed a reply brief, wherein he contends that he has fully exhausted his administrative remedies by submitting written and electronic requests to the Warden, renews his request for appointment of counsel, contends that he is suffering from "age-related medical conditions," notes that his sister has recently sustained a hip fracture, and reemphasizes that he is not a danger to the community.

## II.    Appointment of Counsel

Shankles requests the appointment of counsel to assist him in filing his motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Albarran v. White*, No. 24-2758, 2025 WL 1625537, at *1 (9th Cir. June 9, 2025); *United States v. Jones*, No. 24-11675, 2025 WL 733234, at *2 (11th Cir. Mar. 7, 2025); *Pettis v. United States*, 129 F.4th 1057, 1063 (7th Cir. 2025) ("There is no constitutional right to counsel in postconviction proceedings."); *Tong v. Lumpkin*, 90 F.4th 857, 863 n.2 (5th Cir. 2024); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed

counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017).

Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Garza*, No. 24-40425, 2025 WL 429978, at *1 (5th Cir. Feb. 7, 2025); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.'

The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Shankles is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Shankles provides no cognizable basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his claims. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In this situation, he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Shankles is 76 years old and there is no indication that he is terminally or seriously ill, disabled, or mentally or physically impaired such that he is unable to proceed *pro se* in this matter. According to his Presentence Investigation Report ("PSR"), he obtained a Certificate of High School Equivalency ("GED") in 1972, received an automotive mechanics course certificate in 1989 with a final course score of 99.7, and completed 12 hours of college credit with a grade point average of 3.67 in 1989. He has filed several documents and other letters

*pro se* in the case at bar that are well-written and comprehensible.  Moreover, Shankles has failed to explain why the appointment of a lawyer would be necessary to perform the administrative task of gathering his and/or his sister's medical records to support his motion.  Thus, the court finds that the discretionary appointment of counsel is not warranted.  *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Shankles's motion for appointment of counsel is denied.

III.     Analysis

    A.     Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);[2]

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] This provision is not applicable to Shankles. Although he is more than 70 years of age, he has not served at least 30 years in prison for the offenses for which he is currently imprisoned.

compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1)     the medical circumstances of the defendant;

(2)     the age of the defendant;

(3)     the family circumstances of the defendant;

(4)     whether the defendant was a victim of abuse while in custody;

(5)     other reasons similar in gravity to those previously described; and

(6)     an unusually long sentence.

9

*Id.* § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release or a sentence reduction on his own motion must satisfy the following hurdles:

(1)     the defendant must have exhausted his administrative remedies;

(2)     "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)     the reduction must be consistent with the Commission's applicable policy statements; and

(4)     the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release or sentence reduction unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant

must first submit a request to the warden of his facility to move for compassionate release or a sentence reduction on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed.  *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)).  Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114,

2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021). Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

In this case, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'"); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020)

("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Here, Shankles appears to have exhausted his administrative remedies only in part. He submitted to the court a copy of an email dated April 21, 2024, addressed to FCI-II Associate Warden that also states "To: Warden Doerer," with the Subject listed as "Request to Staff," which reads:

> Dear J. Doerer, my name is Gary [S]hankles. I am writing to respectfully request that I be considered for early release from prison under the cares act - home confinement, or compassionate release [u]nder U.S C & 3582(c)(1) and that you treat this as a formal request for cares act and compassionate release. My emergency, and extra ordinary and compelling reason is a family circumstance. My sister needs a care giver. And I am all she has for this. There are other extra ordinary and compelling reasons like the new 821 Amendment that's dealing with status points, and those same status points that were used to enhance my sentence does have relevance with my Federal case.[3] I would also like to add that my Federal judge has no opposition with my receiving my state time credited under my

---

[3] Contrary to Shankles's assertion, Amendment 821 to the United States Sentencing Guidelines has no effect on or relevance to this case. Shankles is designated as a career offender under U.S.S.G. § 4B1.1; therefore, his criminal history category is VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). Thus, Shankles's criminal history category and sentence are not affected by the calculation of status points under U.S.S.G. § 4A1.1(d). *See United States v. Russell*, No. 24-40430, 2025 WL 720937, at *1 (5th Cir. Mar. 6, 2025) ("Although Amendment 821 reduced [the defendant's] criminal history point total by one unit, *see* U.S.S.G. § 4A1.1(e), this is of no benefit to [the defendant] . . . given that his designation as a career offender mandated his placement in criminal-history category VI."). Accordingly, Shankles is not entitled to relief under Amendment 821. *See* U.S.S.G. § 1B1.10(a)(2)(B) (noting that a reduction in the defendant's term of imprisonment is not authorized when an amendment does not have the effect of lowering the defendant's applicable guideline range).

federal[] sentence by applying program statement 5160.05.[4]  I am now 75 years of age and have been continuously confined for the past 14 + years (since Feb. 2010). Naturally as with anyone my age, their physical health is on the decline and I am no exception to this fact of life.  Further, my sister (Franke Whittington) is now 79 years of age and suffering more frequent and ever-serious physical challenges as she struggles to maintain a 60 acre hilltop, all alone.  Her home/property is basically isolated 10 miles from the nearest town, which is [H]ope, Arkansas.  Her daily existence is therefore definitely precarious and dangerous to say the least. Any possible home-confinement/compassionate release would be to her home.  My sole intent in all of this is to hopefully be permitted to be her care giver.  We are and have always been close and always looked out for one another, period.  My release plan primarily concerns the well being of my sister and the actual sun up to sun down maintenance of her property, as it is a more or less full time job in beating back to the ever encroaching wild that surrounds her homestead.  However, I do possess certain skill/trades or occupational forms of financially supporting myself independently, which I could utilize at almost any given time[] the opportunity.  Again my sister has no one else that's remotely able to help her with her daily life.  [S]he has grown children, but they are both located in the Dallas, Texas area and simply too far away t[o] be depended upon, if and when needed.

---

[4] It is unclear at to what "state time" Shankles is referring or whom he considers "my federal judge."  The Judgments in Shankles's federal cases are silent with respect to its state sentence.  In 2014, Judge Clark responded to the BOP's inquiry regarding Shankles's request that his federal sentences be served concurrently with his state revocation sentence in Cause No. 12975, 294th District Court, Van Zandt County, Texas.  Judge Clark stated that he did not express an opinion as to whether his federal sentence should be concurrent or consecutive to his state revocation sentence, but he noted that a revocation sentence would not ordinarily be concurrent under the Federal Guidelines.  Ultimately, Judge Clark left the final decision on calculation of credit to the BOP.  Judge Clark took senior status in 2018 and became inactive in January 2021.  The undersigned judge is now assigned to this case and has made no statements on this subject.  The court notes, however, if a judgment does not specify that a federal sentence is to run concurrently with a separately imposed state or federal sentence, the sentences are deemed to run consecutively.  *United States v. Ochoa*, 977 F.3d 354, 357 (5th Cir. 2020); *United States v. Milton*, 805 F. App'x 280, 282 (5th Cir. 2020); *United States v. Johnson*, 760 F. App'x 261, 265 (5th Cir. 2019); *United States v. Eiland*, 711 F. App'x 730, 731 (5th Cir. 2017); *Ramirez v. Warden, FCI-Texarkana*, No. 5:23CV39-RWS-JBB, 2025 WL 923444, at *4 (E.D. Tex. Jan. 28, 2025), *adopted sub nom. Ramirez v. Salmonson*, No. 5:23-CV-39-RWS-JBB, 2025 WL 920265 (E.D. Tex. Mar. 26, 2025).  Moreover, the United States Sentencing Commission recommends that any sentence resulting from a revocation of federal or state probation, parole, or supervised release run consecutively to any sentence that results from the conduct that is the basis of the revocation of supervised release.  U.S.S.G. § 7B1.3(f) & cmt. n.4 (2021); *accord United States v. Medel-Guadalupe*, 987 F.3d 424, 431 (5th Cir. 2021); *United States v. Holguin-Hernandez*, 955 F.3d 519, 520 (5th Cir. 2020); *United States v. Mendoza*, 797 F. App'x 883, 884 (5th Cir. 2020).  This is because "a revocation sentence punishes a breach of trust rather than the criminal conduct."  *United States v. Daughenbaugh*, 793 F. App'x 237, 240 (5th Cir. 2019).

Shankles also attached an email dated April 28, 2024, directed to the FCI-II Associate

Warden, which reads:

> Dear Warden, Doerer,
>     Please accept this as an amendment to my previously sent e-mail concerning the possibility of my receiving a Compassionate Release etc.
>
>     Greetings. After some further thought on my application for Compassionate Release, it is felt by me that the following could and hopefully should be of some true relevance. First, it should be noted that I am already on state parole in the state of Texas and will be so until 2042 or until I'm 93 years old. Secondly, and of no less importance, I have never EVER physically harmed another human being in my entire life![5] True, I have been charged and convicted of violent offenses, including my current convictions, but only in the technical sense, as no actual physical violence has ever been acted-out against anyone.
>
> In closing out this personal plea by me, I can and will state that absolutely no thoughts, consideration or even remote plans by me would ever include any form of violence by me in my remaining few years of life! My personal hopes and prayers are that your most serious consideration may be granted in this most urgent matter, as I remain;
>
> > Sincerely & Respectfully Yours,
> >
> > Gary Wayne Shankles
> >
> > "May the worst day in your future,
> > Equal the best day in your past!"
> >                                    Unknown

In addition, Shankles attached an email directed to the FCI-II Associate Warden dated May

21, 2024, which reads:

> About a month ago, I sent you a "Form Request" asking that you recommend a Compassionate Release/Reduction of Sentence to the Director and that the Director send recommendation to my sentencing judge.

---

[5] This assertion is not a recognized ground for compassionate release. If it were, every non-violent offender currently incarcerated in federal prison without a history of violent activities would arguably be entitled to early release. That simply is not the law.

15

> We all know that you routinely send denial letters, about once a month, to those
> who have requested this.
> Could you check and send me the Denial letter, so I can take the issue to the Court
> m[y]self?
> Thx…

There is no indication that Shankles ever received a denial letter from the warden. The

Government, in its response states:

> According to the BOP, while Shankles may have emailed staff, he has made
> no compassionate release (or reduction in sentence) requests; BOP data bases
> indicate that he has never filed for an administrative remedy. Inmates are supposed
> to file a formal request and then appeal any denial through administrative remedies.
> Shankles did not.

Hence, the Government takes the position that Shankles did not even attempt to exhaust

his administrative remedies, and Shankles presents no correspondence from the BOP

acknowledging the receipt by BOP personnel of any of his attached missives. At best, giving

Shankles the benefit of the doubt, he has exhausted his administrative remedies only with respect

to his claims regarding his family circumstances in which he seeks to serve as a caregiver for his

sister and potentially his age. He did not raise any claims to the warden based on his own specific

medical conditions. Therefore, Shankles has exhausted his administrative remedies only with

respect to a small portion of his claims. Moreover, while Shankles may have complied with the

exhaustion requirement, at least in part, before filing his motion for compassionate release,

nothing in the motion indicates that extraordinary and compelling reasons exist to reduce his

sentence or release him from confinement at this time.

16

C.     Criteria for Compassionate Release or Sentence Reduction

1.     Age

While not completely clear, Shankles appears to assert in his motion that he is eligible for compassionate release due to his age.  Section 1B1.13(b)(2) clarifies that extraordinary and compelling reasons exist as to a defendant's age when:

> The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(2).

Here, according to Shankles's PSR, he is 76 years of age.  It does not appear, however, that he has served at least 10 years (120 months) or 75 percent of his term of imprisonment.  The Government notes in its Response dated December 4, 2025, that he had served only 113 months (60.10%) of his 188-month term.  Hence, at this time, Shankles has served less than 115 months (61.17%) of his 188-month sentence.  Moreover, he has not demonstrated that he is experiencing a serious deterioration in physical or mental health "because of the aging process." *See Burrage v. United States*, 571 U.S. 204, 212-13 (2014) (usually, the phrase "because of" demands "proof" of "but-for" causation).

In his letter to the court dated November 1, 2024, Shankles writes:

> I am now 75 years of age and as an inevitable consequence of this age, my personal state of health is and has been steadily in decline.  That said, I am nonetheless, in far better shape than the majority of my peers.

Courts have often rejected such "general complaints about long-term issues without medical proof of the condition or how it is deteriorating." *United States v. Garza*, No. 4:02-CR-100, 2025 WL

964029, at *3 (E.D. Tex. Mar. 31, 2025). In his Proposed Plan of Release filed in conjunction with his Motion for Compassionate Release, in which he expresses a desire to serve as the sole caregiver for his older sister in Arkansas, Shankles indicates that the only ongoing medical care that he will need is "medications only." Shankles also states in his Proposed Plan of Release that he does not require durable medical equipment (e.g., wheelchair, walker, oxygen, prosthetic limbs, hospital bed). He further asserts that he does not require assistance with self-care such as bathing, walking, or toileting nor does he need assisted living and that he will look to the Veterans Administration to assist with his medical needs. According to Probation's report, Shankles is classified as a Medical Care Level 2 inmate, although the medical records provided by Shankles reflect that he was a Medical Care Level 1 inmate at the time he filed his motion. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." Under these circumstances, Shankles has not shown that he is experiencing a serious deterioration in physical or mental health because of the aging process. Therefore, Shankles does not meet the criteria for compassionate release based on his age.

### 2.    Family Circumstances

Although not raised in his Motion for Compassionate Release, Shankles sent two letters to the court, dated November 1, 2024, and July 22, 2025, in which he indicates that his family circumstances present extraordinary and compelling reasons that justify compassionate release.

He claims in a letter to the court dated November 1, 2024, that his immediate priority is to be available to his available to his 79-year-old sister to help her maintain her 60-acre hilltop in Hope, Arkansas, where she lives alone and is isolated, being 8 to 10 miles from emergency help. He describes the circumstances as a "dangerous situation," in that it is "a full-time job to constantly beat back the ever-encroaching wild that surrounds her property." He reiterates similar concerns regarding his sister in his letter to the court dated July 22, 2025, elaborating that "[o]ur plans are for me to reside there with her and assist with everything that's required on a daily basis, as I have done in the past, and I can assure you that the work never ceases or lessens at all - a truly sun-up to sundown job, period." Most recently, in his reply filed January 9, 2026, Shankles states that his sister "recently suffered a hip fracture and now requires assistance."

With respect to a defendant's family circumstances, § 1B1.13(b)(3) provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

> (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

> (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

> (D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver

for such family member or individual.  For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when he or she is "deprive[d] of capacity or natural power," such that he or she is unable to provide self-care.  *See Incapacitate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/ dictionary/incapacitate; *see also United States v. Bautista*, No. 3:15-cr-02720-DMS, 2024 WL 3014637, at *3 (S.D. Cal. June 14, 2024) ("Generally, a person is incapacitated when he is 'completely disabled' and cannot care for himself."). Moreover, "[f]or guidance on what constitutes 'incapacitation,' courts have looked to [the BOP's] guidelines for handling inmate compassionate release requests." *United States v. Al Hunaity*, No. CR 18-723 (RBK), 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024); *see United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *2 (D.S.D. Mar. 13, 2024) ("[C]ourts have relied on the BOP program statement in determining that 'incapacitation' requires that the family member have suffered a severe injury or illness, leaving them incapable of acting as a caregiver."). "'Incapacitation' is defined as 'a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair.'" *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (quoting U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)); *see United States v. Crider*, No. 6:14-cr-00044-GFVT-HAI-1, 2024 WL 1291492, at

20

*2 n.1 (E.D. Ky. Mar. 26, 2024); *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

"Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient." *United States v. Saunders*, No. 4:19-cr-68-28, 2025 WL 1550101, at *5 (E.D. Tex. May 30, 2025) (citing *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024)). Rather, courts require specific evidence of the defendant's need to serve as a family member's primary caregiver. For example, "the defendant must prove with medical support that the family member is incapacitated." *Id.* (citing *United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024); *United States v. Romano*, 707 F. Supp. 3d 233, 237-38 (E.D.N.Y. Dec. 19, 2023)); *United States v. Duprey,* No. CR 10-00101 (RK), 2024 WL 3873938, at *2 (D.N.J. Aug. 19, 2024) ("Defendant has put forth little evidence that [his 84-year-old mother] suffers from an incapacitating medical condition requiring Defendant's care" and, therefore, "has not met his burden to show [his mother's] incapacitation." (citing *United States v. Yarbrough*, No. 2:06-CR00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023))). In this instance, although Shankles states that his sister recently fractured her hip, he provides no evidence of her injury and does not otherwise demonstrate that she is completely disabled or that she suffers from a severe cognitive deficit. *See Romano*, 707 F. Supp. 3d at 237 (the defendant's "failure to attach any medical evidence or opinions (or similarly competent evidence)" rendered "the Court unable to make the necessary factual findings"); *accord United States v. Ahmed*, No. 19 Cr. 603-1 (KPF), 2024 WL 2925112, at *5 (S.D.N.Y. June 10, 2024) (denying compassionate release where the defendant "submitted no substantiation of his wife's medical issues"). Such conclusory statements

do not allow the court to make the necessary factual findings concerning the incapacity of Shankles's sister. *Saunders*, 2025 WL 1550101, at \*5. The mere assertion that Shankles's sister is elderly and needs a caregiver, does not, without more, automatically qualify him for compassionate release under § 1B1.13(b)(3)(D). *Id.*

Moreover, Shankles has not shown that he is the only available caregiver for his sister. *See United States v. Lopez*, No. 23-504040, 2024 WL 244935, at \*1 (5th Cir. Jan. 23, 2024); *United States v. Holder*, No. 23-30278, 2023 WL 8253760, at \*1 (5th Cir. Nov. 29, 2023) (noting that defendant failed "to offer any evidence demonstrating that there is no other family member available to assist in caring for his daughter"); *United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at \*3 (D.S.D. Mar. 13, 2024) ("Without evidence that [the defendant] is the only available caregiver, the court cannot determine whether [the defendant]'s family circumstances give rise to 'extraordinary and compelling reasons' for her release."); *Romano*, 707 F. Supp. 3d at 238 (commenting that it is not clear from the record that no other person can provide the necessary care); *United States v. Wrice*, No. 10-cr-40065-JPG-1, 2023 WL 4030067, at \*3 (S.D. Ill. June 15, 2023) (reasoning that the defendant had not "met her burden" where she "provide[d] no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that [her] stepfather requires a caretaker"). Although Shankles seems to discount the ability of his sister's children to serve as caregivers, he acknowledges in his letter of July 22, 2025, that she does, in fact, receive help from her grown children in Dallas, Texas, who visit on occasional weekends and holidays. Although there is no evidence that his sister is actually incapacitated, the court cannot conclude that her children would not be willing to serve as her

caretakers (or hire others to fill this role) if she, in fact, became disabled. *See United States v. Burden*, No. 3:00-CR-00263, 2024 WL 94402, at *3 (D. Conn. Jan. 8, 2024).

In any event, Shankles has not shown that he would be a suitable caretaker for his sister if he were to be released. First, as discussed above, he claims in his motion for compassionate release that he is experiencing a serious deterioration in physical or mental health because of the aging process under U.S.S.G. § 1B1.13(b)(2). He further claims in his motion that he has "a serious physical or medical condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, and [he is] not expected to recover from this condition." In his letter dated November 1, 2024, he lists a number of medical problems that he claims to experience, including COPD, high blood pressure, an 80% hearing loss in his left ear, serious bouts of vertigo on a regular basis, regular swelling of his feet and ankles, and a history of sinus problems. If Shankles is, in fact, so debilitated as he claims, he would not be capable of caring for his elderly sister and her 60-acre homestead in Arkansas where, according to Shankles, "it's a full-time job to constantly beat-back the ever-encroaching wild which encircles her property." Attached to his motion is a BOP Medical Duty Status form dated May 13, 2024, which reflects that he has been issued a wheelchair, a deluxe double hernia belt, eye glasses, and diabetic socks and that he has a medical restriction which states "No Lifting More Than 20 Pounds." Under these circumstances, the court questions whether Shankles could, in fact, physically care for his sister and her property. Moreover, as he admits in his letter of November 1, 2024, he is a career criminal and habitual offender. In addition to his offenses of conviction of armed bank robbery and carjacking, he has a long record of a series of prior felony

convictions, including convictions for theft of government property, theft of personal property, robbery, conspiracy to possess with intent to distribute cocaine, jumping bail, escape from federal custody, aggravated robbery, unauthorized use of a motor vehicle, escape from a penal institution, and felony escape.  He also has failed to comply with priors terms of probation and parole.  With this type of criminal history, the court doubts that he would be a trustworthy or dependable caregiver for his sister.  In fact, he appears to reveal his true motive for seeking to care for his sister in his letter of July 22, 2025, in which he laments that he will forfeit any and all rights to "EVERYTHING," including an opportunity for a residence, leaving him with "NOTHING at all!" if anything happens to his sister before he is released.  Under the facts of this case, Shankles has not shown that his family circumstances provide an extraordinary and compelling reason for his release from prison.

 3. Medical Circumstances of the Defendant

In this motion, Shankles claims to have medical problems that warrant compassionate release.  He appears to rely upon § 1B1.13(b)(1)(B) of the United States Sentencing Guidelines, which states that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Shankles, however, as noted above, did not exhaust his administrative remedies with respect to any specific medical claims. In his three emails to the associate warden in April and May 2024, he makes no mention of any recognized medical conditions from which he claims to suffer as a basis for compassionate release. Instead, in his email of April 21, 2024, he asserts: "My emergency, and extra ordinary [sic] and compelling reason is a family circumstance. My sister needs a caregiver. And I am all she has for this."

Thus, Shankles's medical complaints provide no basis for compassionate release. It is only in a letter to the court dated November 1, 2024, well after his emails to the associate warden in April 2024, that he claims to have COPD, high blood pressure, a hearing loss, occasional vertigo, tinnitus, swelling in his feet and ankles, and sinus problems. He later mentions in a letter to the court dated July 22, 2025, that he had a "mild" stroke earlier in 2025. A review of Shankles's BOP medical records dated November 19, 2024, reflect that he has been diagnosed with hypertension (high blood pressure), hyperlipidemia (high cholesterol), sinusitis, and COPD, his "subjective tinnitus" is in remission, and his hernia is "resolved." The medical records further reflect that these conditions are well-controlled by medication. He is prescribed an albuterol inhaler for COPD and breathing difficulties; amlodipine, lisinopril, and metropol tartrate for hypertension; atorvastatin for high cholesterol; tamsulosin for difficulty urinating; and furosemide for fluid retention and swelling. His blood pressure is also regularly monitored. In a letter to the court, Probation comments that Shankles "is receiving medication, vision screens, testing, treatment, lab work, and patient education." Where, as here, a defendant's afflictions are

"'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" his medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021).

Records from Victor Valley Global Medical Center in Victorville, California, show that Shankles presented at the Emergency Department on March 7, 2025, complaining of right upper and lower extremity weakness with an onset date that day. These records appear to pertain to the "mild stroke" Shankles references in his letter dated July 22, 2025. The report states:

> The patient was brought in by EMS after he had rt upper and lower extremity weakness that lasted approx. 2-3 hours. The patient was asymptomatic upon arrival to the ED. The patient denies fever, chills, sweats, N/VID, headache, dizziness, vision changes, cough, congestion, sore throat, SOB, chest pain, abdominal pain, dysuria, hematuria or numbness/tingling of extremities. No other symptoms or modifying factors reported at this time.

At the hospital, Shankles was administered a battery of tests with unremarkable results as well as a number of medications, including those mentioned above as well as aspirin to decrease inflammation and blood clotting, clopidolgrel which is a blood thinner used to prevent blood clots, clonidine for hypertension, and pantoprazole for acid reflux. He was discharged from the hospital three days later on March 10, 2025, at which time he had a normal pulse rate of 79, a normal respiration rate of 20, a normal oxygen saturation rate of 96%, and a slightly low temperature of 96.9. Although the last set of vitals taken at the hospital revealed that Shankles's blood pressure was elevated at 140/82, his overall medical condition provides no grounds for compassionate release. According to the Centers for Disease Control and Prevention ("CDC"), nearly 48% of the adults in the United States (122 million) have hypertension (with the condition affecting over

70% of those over 60) and of those, only about 20-27% have their condition under control. In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol. In view of their pervasiveness, Shankles's high blood pressure and high cholesterol cannot be deemed an "extraordinary and compelling" reason for early release from prison. As the Fifth Circuit pointed out in *Thompson*, neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol." *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021); *see United States v. Diaz*, No. 22-40044, 2023 WL 1879404 (5th Cir. Feb. 20, 2023) (affirming denial of compassionate release to inmate who had hypertension, high cholesterol, kidney failure, prostate complications, and poor blood circulation).

Shankles also is not suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility. *See* U.S.S.G. § 1B1.13(b)(1)(B). He is a Medical Care Level 2 inmate who is a stable outpatient and generally requires evaluations only on a monthly to six-month basis. Shankles's Inmate Profile indicates that he is housed in general population in a regular prison unit and is assigned a lower bunk in a cell on the first floor. He is ambulatory but is afforded the use of a wheelchair when experiencing swelling in his legs. While some of Shankles's conditions may require monitoring and medication, they do not substantially diminish his ability to provide self-care in the prison setting and do not limit his activities of daily living. In fact, even after his "mild stroke," Shankles claims in his letter to the court dated July 22, 2025, that he is still sufficiently fit to serve as a caregiver for his octogenarian sister, to reside on her acreage in Arkansas, and to "assist with

everything that's required on a daily basis, as I have done in the past, and I can assure you that the work never ceases or lessens at all - a truly sunup to sundown job, period." He elaborates: "To simply control the always encroaching wild that totally surrounds her property is all but impossible for any single individual to accomplish." Yet, Shankles maintains that he can do so, refuting any notion that his medical condition substantially diminishes his ability to provide self-care within the environment of a correctional facility. Hence, under the circumstances, Shankles does not meet the requirements of § 1B1.13(b)(1)(B) of the United States Sentencing Guidelines. Therefore, even if properly exhausted, Shankles's medical circumstances present no "extraordinary and compelling" reason warranting a sentence reduction or compassionate release.

## 4.    New Bases Raised in Reply Brief

In his reply brief, Shankles, for the first time, lists additional "other reasons" that he contends entitle him to relief under § 1B1.13. The United States Court of Appeals for the Fifth Circuit has repeatedly held that claims or arguments raised for the first time in a reply brief should not be considered by the court. *See United States v. Ramirez*, No. 25-50109, 2025 WL 3555129, at *1 (5th Cir. Dec. 11, 2025); *United States v. Barrera Rivera*, No. 25-40047, 2025 WL 3527439, at *2 (5th Cir. Dec. 9, 2025); *Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir. 2011); *United States v. Rodriguez*, 602 F.3d 346, 360-61 (5th Cir. 2010). The Fifth Circuit has also consistently applied this position in the context of motions for compassionate release. *See United States v. Jurdi*, No. 24-40281, 2025 WL 1000165, at *1 (5th Cir. Apr. 3, 2025); *United States v. Zuniga Hernandes*, No. 22-50796, 2023 WL 3267856, at *1 (5th Cir. May 5, 2023); *United States v. Cogdell*, 855 F. App'x 976, 977 (5th Cir. 2021). Accordingly, the new bases for

compassionate release raised in Shankles's reply brief are not properly before the court and will not be considered.

D.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  Here, neither the nature of Shankles's offenses of conviction nor his history and characteristics warrant a sentence reduction.

Shankles's offenses of conviction entail his commission of armed bank robbery and carjacking.  As Probation recounts in the PSR:

Docket No. 1:10-CR-72 – Armed Bank Robbery

On December 26, 2006, Gary Wayne Shankles (Shankles) entered the Guaranty Bank on Phelan Boulevard in Beaumont, walked to a teller's window, displayed a small revolver, and said, "I am not kidding around fill up the bag."  The teller gave Shankles $3,685.  He informed a second teller that he wanted her money too and he again displayed the handgun.  This teller gave Shankles $2,948, including a pack of money that contained a dye pack.  A bit louder, Shankles demanded that the second teller give him all the money and she said that she had.  She then

activated the silent alarm. Shankles grabbed the two bags of money containing a total of $6,633 and ran. As he was running $940 fell out of the bags at the doorway and was recovered by bank employees, resulting in Shankles leaving the building with $5,693. Nevertheless, the dye pack exploded in the parking lot and the defendant dropped both bags of money.

Bank employees observed as Shankles entered a blue pickup truck in the parking lot and departed the area. The truck, which had been reported stolen from a bar in Liberty, Texas, was located, abandoned, at an apartment complex approximately two blocks from the bank. It was on fire. The truck was a work truck owned by GS Petroleum and both company items and personal items belonging to the driver assigned to the truck had been in the truck when it was stolen. That property included a laptop computer, a cellular telephone, tools, a case with personal papers, and other personal property.

On June 26, 2007, a confidential source advised investigators that a person pictured in media reports as robbing the bank was Shankles, also known as "Greyhound" because he has been able to escape from prison and likes to run. The source advised that Shankles, who was on parole, had cut his leg monitor and committed many carjackings including one in the Dallas, Texas, area in December 2005 (discussed below in Docket No. 1:10-CR-154). The source also provided other information about Shankles and the illegal conduct in which he had purportedly engaged in since being released on parole, including how he would start fires. The source reported Shankles was able to talk his way out of problems due to his age and the way he looks, but cautioned that his looks are deceiving and he is dangerous. Furthermore, the source reported that Shankles was believed to travel to the Liberty/Dayton, Texas, area, but would also stay in the Little Rock, Arkansas, area.

Docket No. 1:10-CR-154 – Carjacking

Prior to committing the bank robbery, on December 12, 2005, Charles Scheibe (Scheibe) reported to the Lake Worth, Texas, Police Department that he had been washing his car, a 2005 Nissan 350-Z, at Paradise Car Wash when an individual later determined to be Shankles, briefly spoke to him about the car. When Scheibe walked to the driver door to get into his car, Shankles walked up behind him, displayed a handgun, and said, "I'm taking you and your car;" to which Scheibe replied, "Just take the car." Reportedly, Shankles said "I'll shoot you with hollow points if you don't go with me." Then, he said "I'll just take you to the country and I won't tie you up." As Shankles was forcing Scheibe into the passenger compartment at gunpoint, Scheibe escaped and ran. When he felt he was at a safe distance, he call 911. He was visibly shaken and scared for his life, but was not injured. On January 10, 2006, the vehicle was recovered at Longhorn Truck Stop

30

in Starks, Lousisiana.  It was displaying a fictitious license plate, and, was locked and unoccupied.  The keys were not found but Scheibe recovered the car.  The police report reveals the car was valued at $35,000.

On February 17, 2010, an arrest team went to a home in Liberty, Texas, to serve a state arrest warrant for the carjacking described above.  Three individuals were found in the residence, where marijuana, pills, and drug paraphernalia were observed in the common area.  The bedroom identified as belonging to Shankles was searched.  A medication bottle containing marijuana was found in the room, labeled with the name "Daniel Fontenot."  The defendant also identified himself with a Louisiana driver's license in the name of "Daniel Fontenot," containing his real photograph, which allowed officers to identify the individual as Shankles.  The defendant finally admitted that he was Shankles and that it was over.  A search of the residence revealed a total of nine firearms, 697 rounds of ammunition, and what appeared to be a delay ignition device that could be used to start a fire.

During a subsequent interview with investigators, Shankles explained that he had no permanent address and was "living on the road" and "come and go."  He said that he was on parole and robbed the bank because it looked like a good target.  He also described stealing a vehicle before committing the robbery, placing a firebomb (consisting of a fuse and a cigarette) in the truck, and departing the scene in another vehicle he had left in the area for that purpose.  He also admitted committing other robberies and stealing other vehicles while on parole.

Shankles has an extensive criminal history beginning in his youth, which includes prior convictions for unauthorized absence at a naval air station, theft of government property, theft of personal property, robbery, conspiracy to possess with intent to distribute cocaine, jumping bail, escape from federal custody, aggravated robbery, unauthorized use of a motor vehicle, escape

from a penal institution [Ellis Unit of the Texas Department of Criminal Justice ("TDCJ")], and Felony Escape [Eastham Unit of the TDCJ]. Shankles also failed to comply with a previous term of probation and was on parole at the time of his offenses of conviction. Shankles was determined to be a career offender pursuant to U.S.S.G. § 4B1.1. He has also incurred a number of prison disciplinary violations in just the last five years, including refusing work assignments on three occasions in 2023, smoking in an unauthorized area in 2022 (despite his COPD), and refusing to obey an order and being in an unauthorized area in 2021. Like the prisoner in *United States v. Jones*, Shankles is "the quintessential career offender." 852 F. App'x 60, 61 (3d Cir. 2021). He has a long history of criminal behavior since he was 18, "with most gaps in that behavior occurring only during times of incarceration." *Id*. at 61-62. As Probation pointed out in the PSR, "Shankles has been committing felony offenses since 1968, has either been under supervision or incarcerated since that time, and has a history of committing new offenses while under supervision and while incarcerated. It does not appear the previous sanctions imposed have deterred his conduct." In short, Shankles's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

In the report to the court, Probation addresses Shankles's assertion that he has never physically harmed a person:

> Mr. Shankles claims that he has never physically harmed another human being in his life. However, his presentence report indicates that he wrote a written statement accepting responsibility and apologizing for his actions for his instant offense. Specifically, he displayed a small revolver at a bank and stated, "I am not kidding around fill up the bag." As for the carjacking, he threatened the victim stating he would shoot him with the hollow points if he did not get in the car while he was stealing it. Also, the following prior violent convictions and dates were

included in the presentence report: Robbery 1969; Aggravated Robbery 1982 (while committing theft of property, he threatened and placed the victim in fear of imminent bodily injury and death and exhibited a handgun). It should be noted, Mr. Shankles was also convicted of Escape from custody on three separate occaions. He has repeatedly brandished and threatened individuals with firearms, and to claim he never physically harmed anyone demonstrates not only lack of remorse for his actions but also a complete disregard for the emotional harm inflicted on his victims.

The court concurs in this analysis.

"[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, but deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight

to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In *United States v. McKinney*, the court denied relief to a prisoner who had end-stage renal failure and had a portion of his foot amputated despite the Government's concession that the defendant had established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i), finding that "granting compassionate release would not comport with the factors enumerated in Section 3553(a)." No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La. Apr. 18, 2023). The court pointed to McKinney's extensive criminal history that included several drug convictions, firearm convictions, and simple battery. *Id*. at *3. The *McKinney* court noted that the inmate had repeatedly failed to comply with previous terms of probation and parole and clearly lacked respect for the law. *Id*. The court concluded that a reduction in sentence would not equate to a "just punishment" under § 3553(a)(2)(A). The court expounded: "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect for the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant." *Id*. This court has the same belief in the case at bar. In view of the nature and circumstances of his offenses of conviction and his extensive criminal history, the court cannot conclude that Shankles's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. As in *McKinney*, the § 3553(a) factors do not support Shankles's release.

On balance, compassionate release is not warranted in this case in light of the applicable factors set forth in § 3553(a). As the court noted in *United States v. Preston*, "[t]he best predictor

of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Shankles's track record is abysmal. In this instance, there is no reason to believe that Shankles would not revert to his prior acts of violence including armed robbery and carjacking, as well as his other criminal activities including drug-trafficking, escaping from penal institutions, and stealing vehicles if released from prison at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). Shankles's past behavior and his refusal to recognize the wrongfulness of his actions give grave cause for concern as to his future conduct. Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Shankles committed serious offenses that justified his sentences, and the circumstances he now identifies do not render those sentences unjust or inequitable. *See id.*

IV. Conclusion

The court agrees with Probation's assessment of this case and its recommendation that the court deny Shankles's motion for compassionate release. Shankles has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 188-month and 180-month sentences of imprisonment imposed upon him for his armed bank robbery and carjacking offenses comport with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentences or justify his release from prison at this time. Neither his age, his desire to be a caregiver for his sister, nor his health merits a reduction of sentence under these circumstances.

In accordance with the foregoing analysis, Shankles's Motion for Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (#34) is DENIED.

SIGNED at Beaumont, Texas, this 13th day of January, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE